Good morning, Your Honors. Andrew Jacobs for Wells Fargo, and may it please the Court. First, I'd like to proceed directly to the Court's questions, and thank you for the benefit of your thinking. Whether the lender exhausted its legal remedies so that equitable relief could be available, Nevada does not have a procedure to afford legal relief for the circumstance that is present here. The Court below did not assert that there was one. Our adversaries did not assert that there was one. What do you mean? Why not just satisfy the lien? As far as satisfying the lien, when you said remedies, I took that, I'm sorry, to mean the assertion of a remedy in suit. We did not satisfy the lien in part because we were not aware of the lien, but in any event, we still believe that the fact that the lien exists under a statute that we claim is unconstitutional nonetheless entitles us to proceed if, in fact, it is unconstitutional. If it's not unconstitutional, then you get into the host of arguments that they make as far as whether we are responsible to, under the CFRs, to do such a thing. We've argued that we don't believe we are obligated to, under the CFRs, do that thing. Also, to the extent the exhaustion issue went to the idea of a Section 1983 suit, I don't know if that is not what Your Honors are asking about. Okay, then we won't talk about that. As far as not satisfying the lien, the lien itself is not constitutionally able to release, to destroy our property interest. I mean, that's sort of the crux of our argument, and we've been wishing to present that argument to this Court for many years now. So either the Constitution permits this or it doesn't permit it. So as far as whether HUD has a protectable property interest here, it's very clear under the law of the circuit under Rust that it does. In Rust, there was property of the United States. That was the issue that was being analyzed in Rust. And in Rust, that property of the United States was owned by a couple named Johnson. And when Los Angeles foreclosed the private property of the couple named Johnson, that was, quote, property of the United States. And though HUD was present in the case, HUD had a protectable property interest, and this Court made clear that it was an exercise of state power over, quote, the property of the U.S. So the fact that the United States isn't presently holding on to something, that contingently it possesses a right to hold on to, doesn't make it not the property of the U.S. There's some district court cases, earlier district court cases, that go both ways on this. That's correct, and Nevada's all over the place with that. Well, I don't know. There's two ways to go, and they've gone both ways in the past, most recently against you. But I'm a little concerned about the other point that you mentioned, which is the federal government's not made a party in this case. Sure. Well, as far as moving down to the idea of whether HUD is a necessary or indispensable party, first of all, in the supremacy clause cases, and the supremacy and property clauses kind of go hand in glove, and you see them together all the time, at least, as in these cases as well, Your Honor. In the supremacy clause cases, a private party is always free to assert the fact that the supremacy clause issue is there, in the absence of the federal party. Well, your problem is you're asserting the federal government's interest, right? Yes and no, Your Honor. And I think if you look at the wording of the property clause, it doesn't say the federal government owns the federal government's property. It's set up like the supremacy clause. It says in its very words in Article IV that the government has the ability to make rules and regulations in respect of its property. So am I right that all of your argument pivots on your contention that the federal government had a protectable property interest here? No, because, first of all, our principal argument we intended to invest in this panel was the takings argument, which I think doesn't have anything to do with whether or not HUD has a protected interest here. Wait a minute. Your strongest argument is your takings argument? It's an argument. It's the argument that we thought we were most inclined to present. But as far as the property and supremacy clause arguments, which is I think the thrust of your question, Your Honor, that argument also does not depend on their ‑‑ there is a federal property interest, so it implicates the property and supremacy clauses. Exactly what is the federal property interest? The federal property interest consists of a ‑‑ Invested was a mortgage, right? Right. Which is ‑‑ This is not a mortgage. No, it's the ability to take back the property just as a mortgage is the right to take back the property. But the mortgage is a property interest that is ‑‑ this is a contract, an insurance contract essentially. Right. Nothing else. It's no present interest in the property. When you have a mortgage, you have a present interest in the property of a lien or type. Well, I think there's two levels to the property interest here, Your Honor. And one of the levels is that you have a contingent interest that has no risk. In the Rust case, it was the mortgage where the government had ‑‑ But it's not even a contingent interest. It is a contract agreement that if X happens, you will do Y and they will do Z. Well, that's kind of what a mortgage is when it's foreclosed. You get the property if it's not paid. Well, opposing counsel argues, or they're going to argue, that now this contingent can't happen. It cannot be the case that the federal government will be called upon to pay this. So it's even more ‑‑ another step removed from what Judge Berzon is suggesting, isn't it? Two responses, if I could, Judge Kristen. First of all, we're talking about levels of indirection here because it wasn't property in Rust that was strictly held. One of the different axes we're on is that you had something that wasn't itself the federal government. Fannie is an instrumentality of the government. And here, you know, you have actually the federal government's direct interest, which I would argue is stronger. But the second level, aside from mortgage versus insurance, and I understand that the point's well taken, the second level is, and they say, well, it's like State Farm. State Farm doesn't own your car. No, State Farm doesn't capitalize like a $100 billion, $50 billion machine. It's the federal government's security, basically. You're trying to analogize it to that. And it's just not. Unless a demand is made upon the federal government, and at this point I can't see why the federal government is at risk of having that demand made. So what's your best answer to that? My best answer to that is that the federal government set it up so that it would replenish the mortgage insurance fund for American consumers and homeowners to get the money from sales of properties just like these. The fact that they cut it off is the problem. It isn't something that excuses what they did. The question is whether they cut it off or whether the bank failed to defend its interest, whether this is going to be the bank's problem or the federal government's problem, right? Well, and my best answer to that, Your Honor, is that whether the bank failed to defend its interest is contingent on whether you've rejected our takings argument. If you haven't rejected our takings argument, then we would win. Okay. May I just ask one other question? Should we – we don't have the federal government, getting back to the Rule 19 question, which we sort of sua sponte asked you to think about. Should we be concerned that we don't have the federal – we're taking the party's word for it that the federal government – these parties' word for it that the federal government is not at risk? Well, I think that, and again, the Supremacy Clause cases are frequently property clause cases, and in the Supremacy Clause cases, the government isn't there. Okay. So, again, your time is ticking, and what I'm trying to ask you, but I didn't do a good job, is should we be – if we're concerned, do we need to get the federal government – should we remand under this Rule 19 theory that the federal government needed to be called upon to weigh in on this issue? Well, since we lost, we would welcome a remand on any basis to extend the case, but I believe it's not necessary because it is a – I think it's honestly a crab notion of constitutional protection, which is why in the Supremacy Clause cases you let privates do it. Okay. In the Property Clause, I don't think we want to set our thumb on the scale against vindicating property interests. Their whole argument, and this is the sort of paradoxical nature, they argue this Freedom Mortgage case that Your Honor alluded to, if it's the point that the federal government has set up regulations and the point is all these duties are on us, how in the heck can we lack the standing to vindicate those interests? That makes no sense under the Freedom Mortgage analysis. But this isn't a standing problem. The Rule 19 issue is not a standing problem. Sure. Sure, Your Honor. I was toggling back up to the other question.  I apologize. Absolutely. But you said your Takings Clause issue is logically prior. So you want to say five words about it? At least. Please. Thank you very much, Your Honor. I mean, as far as the Takings Clause goes, I'm just kind of baffled aside from their saying that they think the argument is a poor one and not addressing it. I mean, liens are property. Our lien is completely extinguished. All right. But there are two apparently possibly fatal flaws. One is that this all existed before you took the property. So you took subject to the statute and its consequences. And secondly, there's a state action problem floating around here, is there not? I'd love to. Thank you for asking the judge for his honor. I mean, first, as far as the we took subject to it, putting aside the fact that for 20 years the statute never did this. So we really did, in a meaningful way, take subject to it. What do you mean it never did this? The statute was not applied between 1991 and 2011. But to get to Judge Berzon's point, because your time is ticking, at the inception of this deal, it was, right? The statute was in effect? The statute was in effect the whole time. The Nevada Supreme Court hadn't reconstructed it. The best answer is Armstrong. Armstrong is the short answer to your question, Judge Berzon. But it's not an answer to mine. I just want to be really clear, counsel. I want to be fair to you, to your client. Was the statute in place at the inception of your mortgage? Yes. Okay. All right. Thank you. Yeah. And Armstrong is the case that says where the government had a right to destroy the lien, and the lien later arises and the government then destroys it, it's a taking. Armstrong takes care of this time sequence thing. As far as state action, it is circuit law that the statute is state action. I have no idea how they reason around that. I mean, Born Valley said it was state action. It still is state action in the Ninth Circuit. So that one we think is a pretty easy one. But Armstrong was a case in which there was a materialman's lien. The government had the power to destroy the lien before the lien arose, just like the statute here existed before our mortgage existed. And then the government came in and destroyed the lien. And then the third problem, of course, is the fact that you could solve this problem by paying a super priority amount. Respectfully to the question, Judge, I don't think that that has to do with takings. I mean, you know. Why not? Because that means that the most you're taking is that super priority amount. Not the rest of the mortgage. I mean, the lady in Nick could have complied with the government's direction in the suit. It was still a taking and it was still an exaction. The letter in which? The U.S. Supreme Court Nick case that we cited as supplemental authority in June. I mean, the fact that you could comply with the government's direction doesn't make it any less a taking of your property interest, Your Honor. But would the taking then be for the amount of the super priority lien or for the amount of the mortgage? It would be for the amount of the value of the home under the mortgage, Your Honor. Why? Because that's... If all it was going to possibly cost you and which you could probably, which you could recover, would be the super priority lien. This happened two years before the Nevada Supreme Court made it clear that we would ever have to do that. For 20 years, no one did this in Nevada. From 1991 to 2011... It's in the statute. I don't get that. And three of the dissenting justices in 2014 thought it wasn't in the statute and the market didn't think it was in the statute until they said so. But the taking gets around notice. Notice is integral to due process but not to takings, Your Honor, would be our answer. Okay. Thank you. I'm not sure I understand it. Thank you. We will give you a minute in rebuttal, by the way. Thank you, Your Honor. Excuse me, if you're splitting time, this should be the seven minutes and the three minutes? Right. Okay. And I also can barely hear you. If you could keep your voice up, please. I apologize, Your Honor. Not at all. Jacqueline Gilbert on behalf of SFR Investments, Pool 1, LLC. Going to the court's questions, as far as exhaustion of legal remedies, I don't think anybody suggested that you have to exhaust all legal remedies. Here you have a case where the bank did nothing, absolutely nothing. And if you're in equity, then you have to show you did something. And I think that's the point that Judge Mahan was saying. If you're not going to pay the lien, then do something to stop the sale. Here there was no contact with the HOA or its collection company at all. So I don't think it's a matter of you have to exhaust. We were told in passing that they didn't get notice of the foreclosure. I don't know what they meant by that. I think what the notice of default, my understanding is they absolutely acceded to the notice of default. And the notice of sale, I believe that Judge Mahan found that the testimony, it was mailed to Wells Fargo at the same addresses that the notice of default was. In this case, we have a lot of cases to keep straight today. Is this the case where there's one argument that the notice was really addressed to the homeowners, advising the homeowners that they were going to be foreclosed upon, and the second argument was that they didn't receive notice of the sale, but Judge Mahan found that it was sent to them by certified mail? Correct, Your Honor. And the one is not that they didn't receive notice, but that the notices were simply directed. Yes. To the homeowners. To the homeowners, yes. That was my point. Rather than saying there's a super priority amount telling them something. Yes. But as Your Honors have noted, the law was on the books and banks. It wouldn't let anybody understand priority in loans. As to the second question, which is, is the insurance interest property of the United States? We don't believe it is. And that's because the U.S. government doesn't own the deed of trust, and they don't own the actual, they haven't taken title to the property. Every case cited, every case cited is where either they own, the U.S. government owns the deed of trust, has been assigned the deed of trust, or has taken title after a bank foreclosure. The only two cases that suggest otherwise is Washington and Sand Hill, the Nevada District Court, and the other one, excuse me, Your Honor, I need to look it up, is U.S. v. Victory Highway, where the court suggested that an insurance interest might reach this level of property clause. But even in that case, the closest that would become is dictum. And that's because in that case, they actually had the deed of trust had actually been assigned to them.  But every case that's been cited, the U.S. had the property interest to begin with. And to go to an intended way to... Well, an insurance interest is not an interest, right? An insurance, a promise to pay somebody in the event something happens is, it's a contract which itself is not, provides no benefit to the insurer, other than whatever money they're getting paid if they were not the United States to be the insurer, right? So that, the interest, as I understand it, the property interest that's being pointed to here, is not the insurance agreement, but the contingency that if the insurance contract is triggered by the obligation to pay the insurance that the United States would then get, has a promise of getting property at that point. Yes, Your Honor. And I would agree completely with that. And the reason is... But the question is whether that second thing, i.e., if X happens, then we will have property. Yes, Your Honor. So there's only a danger of the United States really losing out here if it's obligated to pay, that is, to insure the bank against the lender against this loss, and there's any risk that it wouldn't get the deed, basically. Yes, Your Honor. Right? And I'm trying to figure out how that could possibly happen. All of the parties, and I think Judge Berzon is too, we all are, and the parties have represented that there is no possibility of that happening. Correct, Your Honor. I think City of Joliet was a good example of that, where the deed of trust is owned by the bank or they have the interest in it. And until they present either the deed of trust and assign it to the government or they foreclose and sign title, there is no interest for the government. And refinancing and putting money back into the FHA fund doesn't need to happen where they don't have to pay out. So it doesn't decimate the fund as the bank has suggested. But in this particular circumstance, as it has played out, in fact the government is going to have to pay and not necessarily get conveyance of the property, right? In this circumstance there was no transfer. Well, if there were one. And that's right, there's no transfer. So there's no transfer. So the government is not going to have to pay anything out. Is that the point? Correct, Your Honor. It's the bank's loss. Right. The district court decided it was the bank's loss because the bank failed to protect its interest. Correct, Your Honor. City of Joliet is also similar to that. Right. So I'm worried about the fact that this is not exactly the only foreclosure case that has happened in Nevada, right? Correct. And we have to be very concerned about that. Particularly because we're the Ninth Circuit and if we're going to publish anything, we have to be very, very concerned about that. So are there other cases out there that have addressed this issue? Are there other cases where HUD has come in and affirmatively taken this position? I'm sorry, the FHA has come in and taken this position where we've got rulings to this effect? Because you all didn't really brief this in the district court. That's true, Your Honor. Okay. I am trying to remember any case that I'm aware of where HUD was a party. Actually, Washington and Sand Hill was the only one that I think HUD was brought in as a party. Even the district court there did not even reach the issue of whether or not it was actual property. Well, we could and we have asked for a government amicus brief after argument without having them be an actual party for their views on this question. And, Your Honor, what I would say to that is in every one of these cases, especially where Wells Fargo has been involved, something has gone to the Attorney General to advise them. Has that happened here? Yes, it did. Did you show us that that happened here? Yes, it did, Your Honor. Great. I'd love to see that. And then just for the benefit of opposing counsel, because I think you're going to get another minute, we have looked for that and can't find it. We've also looked to see, and I think it's notable, that there are other cases where the federal government has intervened and those are the only cases, as far as I can see, where they had title. And I believe that that's true. Not any case, for both of your benefit. We can't find one where the federal government just stood in this position where there was a question about this contingent obligation to basically insure. I know of none, Your Honor. And so the record site, you've got it for me? Yeah, let me find it for you real quickly, Your Honor. Sorry. Just for the record, you're over your time. I would prefer that you go on and not split the argument. But if you want to split the argument, you better split it now. Your Honor, I believe that the notice to the Attorney General is at 13.02. Thank you. Good morning, Your Honors. Amanda Hebert, appearing on behalf of Sunrise Highland, should it please the Court. I will be brief, and I understand that I have a limited amount of time available. If it pleases the Court, I would like to focus on Issue 1 regarding the equitable relief argument. I believe that Sunrise Highland has focused the most on that in its own brief. So the question is whether or not the lender, Wells Fargo, exhausted its legal remedies so that equitable relief is available. The short answer, I believe, is no. And in order to get to that conclusion, I would like the Court to look at the entire timeline of the case, going back to 2006 when the HOA CC&Rs were recorded. And I'll note that language from the CC&Rs is also reflected in the 2010 deed of trust itself. Now, after the CC&Rs were recorded, the Rosso family bought the home. I'm having trouble hearing you. Oh, my apologies, Your Honor. In 2008, the Rosso family bought the home for $385,000. September of 2010, they refinanced the home with Wells Fargo's predecessor. In September of 2011, Wells Fargo became involved. They got the interest, and the deed of trust was conveyed to Wells Fargo at that time. In 2011, in September of 2011, Wells Fargo becomes involved in this matter. HUD is already involved. Around that time, a red flag incident occurred that I believe that Wells Fargo should have paid attention to and did not, and that is that the Rosso family stopped making its mortgage payments. This, I believe, was an indication of financial distress that Wells Fargo ignored. Wells Fargo knew, first of all, the home was within the HOA, that the CC&Rs allowed the HOA to collect assessments as well as conduct a foreclosure sale, and Wells Fargo reasonably should have known that the Rosso family was struggling financially. If they couldn't pay their mortgage payments, they should have known they could not have paid their assessments as well. Counsel, you just have about one minute. So, right, they have to argue. Are you arguing that this is why there wasn't a showing of unfairness? That's correct, Your Honor. Okay, and if they had made a showing of unfairness and their argument is that just the purchase price alone is extreme, and if it's extreme, we know there's not a 20% threshold anymore. If it's extreme, they still have to show some nexus, some connection. Isn't that right? I believe that's correct. To a low purchase price. Is that right? That is correct. I also believe that this is a very pertinent fact that has not been touched upon much at all in the briefing or today, and that it does go to the... What is the pertinent fact? The fact that there was a financial struggle on behalf of the family regarding the mortgage. Okay, but that's going to be true any time there's going to be a notice of default, surely. So my question is, if I could quickly, what's their strongest argument that there was a connection, that there is unfairness here? What's their strongest argument? I think that it could be argued that overall just the overall price and the notice issue, but, again, going back to the equity issue, and I believe that that is topic one. I believe that that is quite important to the HOA, and maybe the most important issue to the HOA, is that Wells Fargo should not be permitted to seek equitable relief knowing all of those facts and knowing about the HOA's power to assess the property. What exact equitable relief are you talking about? I'm really lost as to what realm we're in here. You're saying if they otherwise win everything that they want to win, then, therefore, the question is can they get equitable relief, i.e., can they get the house back? Is that basically what you're talking about? Essentially, yes. My concern is that the lower court's order should be upheld was correct, including the lower court's finding that equitable relief was not properly granted. It could not be granted. Right, and to answer Judge Berzon's question sort of what galaxy are we in, they have three ways in Nevada law to show this, and they're relying on it. They're trying to argue that it's unfair, right? Is that fair? I mean, is that correct? The point that I'm making is that if they are arguing that it's unfair, that that is an unreasonable argument to make. That the purchase price is unfair. Yes, but also that just the bank's knowledge and refusal to take any action to prevent that little purchase price from being issued. But your argument is they should have taken action because they knew this person was in default, I mean knew that you have a huge company and billions of mortgages, and they have one mortgage that's in default, and they're supposed to focus on this one mortgage in default, look at it, decide that it's an HOA, and then realize that that probably means they're not paying their HOA fees, which isn't necessarily so because the HOA fees are a lot less than their mortgage, presumably. And from that, they're supposed to surmise that there could be some action on this lien, and they're supposed to go do something about it? Is that the point? And, Your Honor, I'm trying to make the point, maybe I'm not doing the best job at doing it, but I'm trying to show that Wells Fargo had many opportunities to understand what was going on. Well, what I don't understand is why are you going through this exercise? If they had notice of the foreclosure, then they had an opportunity. Why do they need their home rest with us? And I just believe that that is further proof that Wells Fargo knew that there was some kind of – So you keep saying that. Is your argument, counsel, that's why it's not fair? That's not unfair, right? Because they had notice? I really don't want to put words in your mouth, but I think that's what you mean, and you're not really saying it. So is that what you mean? That's correct, Your Honor. Is that because it's not that clear that they got notice? Well, and our position is that it is clear that they got notice, but this is an additional fact in support that they, if they did, even if they did not get notice, that they should have done some kind of due diligence, some kind of research investigation, something to protect their interest, and they didn't do that. All right. Thank you for your time. Thank you, Your Honor. It seems a little far-fetched to me, to be honest. I mean, if there's notice, there's notice, but if there's not notice, this seems rather far-fetched. Thank you. I appreciate that, Your Honor. Thank you. Our argument's real simple. Under NIC, if they took our property, it's a Fifth Amendment claim for just compensation. If they didn't, I lose. They're not saying they didn't take our property. There's all this circling around whether it's fair or not that our property was taken. As I understand it, they're not addressing a taking argument, or they're addressing a taking argument, assuming it prevails and saying, nonetheless, you shouldn't get equitably. Wow. I think NIC is not reconcilable with that proposition, if that's what they're saying, and they haven't mentioned NIC or takings, really, so I don't know how they're saying that so much. But if that's the best formulation of their position, I think we win, because NIC is crystal clear. NIC says if you take the property, if the government takes the property. Now, if they want to say the whole is not a government, that's an argument. But you can't say we were paid, and you can't say we didn't lose our property. Whether we're stupid or negligent, we lost our property. And her argument basically amounted to we should have done diligence was the last argument that they made. And like you said, Judge Kristen, you're formulating a rule in a messy sandbox with a couple thousand foreclosures in it. And maybe this case has one set of facts relating to notice. Maybe other cases have a different set. Well, for example, under the new statute, as I understand it, you're supposed to get direct notice of the actual super-priority lien amount that you're supposed to pay. Does that cure all the problems, because then all you have to pay is the super-priority amount? You know what it is. There's no notice problem. Is that the end of the problem? It's not the end of the problem because the notices are all over the field. They refer to total amounts of super-priority. All right. The best possible, a really good notice. You now, the super-priority amount is $500. The reason is because they didn't pay for nine months. This is how much it was for each month. If you don't want the house to get sold, you have to pay this amount. And that occurred in 2012 at a time when it was aimed at the notices. No, I'm asking you now, okay, if that was a notice. Are all the rest of your arguments by the boards? I don't think the takings argument ever goes by the board. If the government takes your property and you're not compensated, that's the teaching of Nick. That's a rock that their argument has to go around. That doesn't change. If we're negligent. But they're only taking your argument because you didn't do X. Well. You could have done X and they wouldn't have taken your property. I think there's a host of reasons in 2012 we didn't know to do X. There were notices calculated to have us do that. Wait, wait, wait. Forgive me, but you've mentioned this now twice in passing, and I read the brief, so what am I missing? What is your strongest argument that the predecessor, your client, did not get notice of this foreclosure? It's that in 2012, first of all, that the content of the notice is not calculated to apprise a bank as opposed to a homeowner. Got that. And it's that in 2012 when there's essentially no judicial decisions, and they are for the banks, that it doesn't extinguish. So how would we have known to do this? It was in 2014 in September when we got put on notice four to three by their Supreme Court that we had to do this. Before that, the decisions generally trended for us. Judge Mahan, the author of this in 2013 in SRMOF, which we cite, says we didn't have to do this. Okay. But in this case, counsel, we have several cases, and it is a remarkable situation. But this is our job, and we're trying to work these out, and they are different. In some cases, lenders made some attempt to satisfy the super priority, and maybe that was sufficient, or maybe it wasn't. But in this case, as I read this record, Wells Fargo didn't respond to this notice at all. Is that right? Not directly, Your Honor. But, again, negligence, and especially in this fraud context we've discussed significantly, does not get you around the rule of NIC. Is that your unfairness argument, your entitled equitable relief because the law was unsettled, and that's what makes this unfair? I'm arguing we're entitled to just compensation in a Section 1983 or a declaration claim because they took it. I'm not arguing generically that it's unfair in the way they're putting it in my mouth. Okay. That's not my argument. Okay. I appreciate the clarification. Okay. Thank you very much. Thank you, Your Honor. Thank you for your time. The case of Wells Fargo v. FFR Investments Bulls is submitted. We will go to City Mortgage v. Corte Madero, homeowners.
judges: Graber, Berzon, Christen